**MEL–MAR COMPANY, Inc., Appellant,**

v.

**CHEMICAL PRODUCTS COMPANY,**
Appellee.

No. 12732.

Court of Civil Appeals of Texas.

Galveston.

Nov. 18, 1954.

Rehearing Denied Dec. 9, 1954.

Theo. R. Kirchheimer and T. J. Stovall, Jr., Houston, for appellant.

Lamar Holley, Dallas, for appellee.

HAMBLEN, Chief Justice.

This suit was instituted by appellee Chemical Products Company against appellant Mel-Mar Company, Inc. to recover damages for breach of an alleged contract. As plaintiff before the trial court, appellee alleged that it had agreed to process certain raw chemicals so as to produce cleansing compounds, which appellant agreed to purchase at a price to be determined by adding the actual cost of the chemicals used, cost of the bottles or containers needed, cost of labor in processing, plus a profit to appellee of one dollar per case of processed compounds. The contract was alleged to have resulted from a series of negotiations between H. H. McJunkin, managing partner of appellee, and Margaret McLendon, who was alleged to have either real or apparent authority to bind the appellant, a private corporation. The negotiations were alleged to have commenced in July, 1950, and to have culminated in a written order dated December 21, 1950, wherein appellant authorized the manufacture and shipment upon the stated terms of 1530 cases of the compound. Appellee alleged performance on his part by the purchase of the needed raw materials, the processing of same into the required compounds, and the preparation for shipment. Breach by appellant was alleged to consist of a countermand of the described order on January 5, 1951, and a refusal to pay the agreed price.

In defense of appellee's suit, appellant pleaded that the compound prepared by appellee was not suitable for domestic or commercial purposes, as represented by appellee; denied under oath that it entered into the contract alleged upon; denied that Margaret McLendon had authority to bind appellant on such contract; and further asserted that if any contract had been entered into between the parties, as alleged, same had been repudiated and abandoned by appellee by its requirement that appellant pay the sum of $4,000 in advance of shipment.

Trial was before a jury, which, in response to special issues, found that Margaret McLendon conducted the negotiations with appellee as alleged; that such negotiations culminated in a written order from Margaret McLendon dated December 21, 1950, for 1530 cases of appellee's product; that Margaret McLendon, in writing such letter, was acting within the apparent scope of the authority of Mel-Mar Company, Inc.; that such proposal made by Margaret McLendon was unconditionally and unqualifiedly accepted by appellee; that the compound was not represented by appellee to be suitable for domestic purposes; that Margaret McLendon agreed to pay appellee a profit of $1 per case on all cases sold to appellant; and that the sum of $7,227.31 would compensate appellee for the monetary loss for the preparation of the compounds. Judgment was entered in favor of appellee in accordance with the verdict.

This judgment is attacked by appellant in seventeen points of error. Points 1, 2, 3, 4 and 17 are directed to the proposition that there is no support for the finding that Margaret McLendon had apparent authority to bind appellant. Points 5 and 6 assert that the uncontroverted evidence shows that appellee did not unconditionally and unqualifiedly accept the proposal of Margaret McLendon to purchase 1530 cases of compound, but showed that appellee repudiated any such agreement by adding a new condition requiring the payment of $4,000 in advance of ship-

ment. Point 7 asserts that the proof failed to prove performance of any contract by appellee.

Point 8 is directed to the asserted improper issue of damages submitted by the trial court, and points 9 to 16, inclusive, are directed to error of the trial court in admitting evidence on the issue of damages, which evidence, appellant contends, is secondary, and not the best evidence. Appellant's points will be discussed as they have been grouped above.

Both litigants agree that Margaret McLendon had no actual or express authority to bind the corporate appellant to a contract such as is here involved. The judgment entered must be sustained, if at all, upon the proposition that the proof supports the finding of the jury that Margaret McLendon was acting within the apparent scope of the authority of appellant. The determination of that question has required a careful review of a rather extended statement of facts, which includes numerous exhibits. From such review, the following facts which bear upon the question appear to be established. The Mel-Mar Company was chartered by the State of Texas on August 30, 1950. Its purpose was to purchase and sell goods, wares and merchandise under the provisions of Sec. 39, Article 1302, Revised Civil Statutes of Texas. Its incorporators and directors were R. B. Melanson, Mrs. Margaret McLendon, Dr. Louis G. Pawelek, Harlan Pace and Devereaux Henderson. R. B. Melanson was president, and Mrs. Margaret McLendon was vice-president. These facts were ascertained by appellee by inquiry from the office of the Secretary of State of the State of Texas, during the negotiations between it and Margaret McLendon. Throughout the negotiations, appellee dealt exclusively with Mrs. Margaret McLendon, and she alone expressly represented that she had authority to enter into the contract sued upon. R. B. Melanson, as president of appellant corporation, knew that Margaret McLendon was promoting a sales campaign for cleaning compounds, and that she was negotiating with appellee in Dallas for the furnishing of such products. He testified however that Margaret McLendon had no authority to contract for the purchase of the product until orders for same had been procured. There was no proof that appellee had actual knowledge of this limitation upon the authority of Margaret McLendon. Mr. Melanson denied, and there was no proof to the contrary, that the corporation had knowledge, except through Margaret McLendon, of the order for 1530 cases of compound until receipt on January 5, 1951, of an invoice from appellee in the sum of $4,000.

A considerable portion of appellant's brief is devoted to a discussion of the law of estoppel as it bears upon the doctrine of apparent authority, and to the citation of authorities supporting their contention that the facts in this case fail to remove it from the application of the well-recognized principle to the effect that a party dealing with an agent is bound at his peril to ascertain not only the fact of agency, but the extent of the agent's powers. We deem a review of the authorities cited by appellant to be unnecessary for the reason that they are not factually analogous in one controlling respect to the facts in the present case. H. H. McJunkin testified that during his negotiations with Margaret McLendon, discussion was had concerning the procurement of bottles and labels for the product appellee was to manufacture. That it was determined that these items could be procured by appellee at an advantageous price, and Margaret McLendon authorized their purchase by appellee. The proof then conclusively shows that on October 10, 1950 appellee sent invoices to appellant for ten thousand labels at a total price of $224.40, and for 25 gross 16 oz. jars and 25 gross pint bottles at a total price of $220.50. Both invoices were paid by the appellant corporation by its checks signed by R. B. Melanson. It is the opinion of this Court that this proof, under the circumstances here involved, clearly raises the issue of apparent authority.

■ In 2 Tex.Jur., page 429, Sec. 41, the applicable law is stated as follows: "The principal may not close his eyes to what the agent is doing in the exercise of his position * * * a principal who does not use the means within his reach and which, for his own protection, prudence would suggest, to ascertain how the agent is using his powers, cannot be heard to deny knowledge of the assumption of authority as against one who has dealt with the agent on the faith of the open and long continued exercise of apparent power."

■ We feel that the application of this principle to the facts above recited, clearly supports the jury finding of apparent authority.

■ Proof of the terms of the contract made between appellee and Margaret McLendon, consisted almost exclusively of the testimony of H. H. McJunkin, and copies of correspondence between appellee and Margaret McLendon. Throughout the testimony it is apparent that appellee was to be paid for the products manufactured by it. McJunkin repeatedly testified to the inability of appellee to finance such an operation as was contemplated by the parties, and to statements by Margaret McLendon of appellant's ability and willingness to finance same. This testimony is corroborated by the proof of the procedure followed in procuring bottles and labels heretofore mentioned. The act of appellee in billing appellant in the sum of $4,000 prior to delivery of 1530 cases of the product does not, in our view, constitute a new condition imposed by appellee, but on the contrary appears perfectly consistent with unconditional and unqualified acceptance of the contract by appellee, as found by the jury.

■ By point 7, appellant insists that appellee is not entitled to recover for the reason that the contract had never been performed by appellee. The proof showed that on December 21, 1950, appellee sent a telegram to appellant in words as follows: "Please send written confirmation of three compounds for January delivery." On December 21, Margaret McLendon, purporting to act for appellant corporation, wrote to appellee, stating: "The following is the breakdown on the quantities and sizes for our January 15th promotion." This statement is followed by a list totalling 1530 cases of the compounds referred to. On December 28, appellee sent appellant an invoice for $4,000 described as "For deposit on shipment due you in January, 1951." On January 5, 1951, appellee was notified by telephone of appellant's repudiation of the order. The proof further shows that on January 1, 1951, appellee had bottled and ready for shipment, 816 cases of the compounds, that the raw chemicals to fill the remainder of the order were mixed and ready for bottling and shipping, and that the bottles, cases, and labor was available to complete the order. Under this state of facts, this case falls within the rule announced in Tufts v. Lawrence, 77 Tex. 526, 14 S.W. 165 wherein it is held that where one who has agreed to buy an article to be manufactured, repudiates the contract, without cause, before delivery, he is liable for breach of contract.

By Point 8, appellant complains that the trial court erred in submitting Special Issue No. 9 to the jury for the reason that the issue as submitted did not submit the proper measure of damages. We are of the view that appellant is correct in this contention and that Point 8 must be sustained.

Special Issue No. 9, as submitted, is as follows: "What amount of money in dollars and cents, if any, do you find from a preponderance of the evidence would compensate the plaintiff, Chemical Products Company, for monetary loss if any, for the preparation of chemical compounds which are the subject of this controversy? Answer in dollars and cents if any."

■ The contract sued upon by appellee was an executory one, in that it had not been fully performed by appellee at the time the appellant notified appellee of

its repudiation of the contract. The measure of damages properly recoverable by appellee in such circumstances is the difference between the contract price and the value of the goods in the condition they were in when notice of repudiation was received. Tufts v. Lawrence, supra. The issue as submitted does not inform the jury as to the proper method of measuring the monetary loss which it is asked to find. Appellant objected to the charge for, among other reasons, that it would allow the jury to confuse the measure of damages, that is to say, the measure of damages applying to an executory contract and the measure of damages applying to a contract fully performed before the breach. This objection is, we feel, well taken, and the submission of the issue by the court was error.

■ Appellee's proof as to the cost incurred in the manufacture of the compounds involved, consisted in large measure of testimony by H. H. McJunkin as to amounts expended for raw chemicals and labor by appellee. During the course of this testimony, appellant elicited the fact, either upon voir dire examination or cross-examination, that the witness was not testifying from independent recollection of the facts stated, but was referring to memoranda made by him from original records of appellee. The witness' testimony, so referable, was objected to by appellant on the ground that it was not the best evidence of the facts sought to be proven, but showed upon its face that it was secondary evidence. These objections were overruled by the trial court and the tendered testimony was admitted in evidence. In one instance, the trial court admitted in evidence, over appellant's similar objection, a written memorandum purporting to be a recapitulation of the amount expended for labor which the witness admitted having made from original records which were available but not offered. The asserted error of the court in admitting such testimony and evidence forms, in part, the basis of appellant's points of error 9 to 16, inclusive, and insofar as

such numbered points are so directed, they should in our opinion be sustained. The law is flexible insofar as the type of proof required to prove a certain fact is concerned, but is inflexible in its requirement that the proof offered must be the best available proof. Here the witness McJunkin did not, and patently could not, have an independent recollection of the many expenditures for labor and material used in the manufacture of appellee's product. Under such circumstances, the law permits the introduction of records kept in the course of business, as being the best evidence available to prove the facts. In such circumstances, however, it is the records speaking and not the witness. The opposing party is entitled to examine such records, and test their correctness in any manner available. In admitting the tendered testimony of the witness over appellant's objection, when the record reflects that the original records were available and could have been produced, the trial court denied to appellant the rights to which it was entitled, and committed reversible error.

■ Appellant has grouped points 9 to 16, inclusive, in its argument. One contention made by appellant is to the effect that certain testimony offered as to the cost of raw chemicals used by appellee was incompetent because the chemicals were admittedly purchased before the contract was entered into. We see no merit in such contention. If appellee had all of the chemicals in stock prior to the contract, it would nevertheless be entitled to recover for so much as were used. However, in proving the value of the chemicals used, appellee is required to produce the best evidence available. Only to the extent that they are directed to appellee's failure to furnish such proof, are appellant's points sustained.

For the reasons stated, we are of the opinion that this judgment must be reversed, and the cause remanded. It is so ordered.

Reversed and remanded.